## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. COMMERCIAL RESINS COMPANY,) <br> INC., an Oklahoma company, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> 1. RON CARLSON, JR. and ) <br> 2. CHRISTINE CANDY CARLSON, ) <br> individuals, ) <br> ) <br> Defendants. ) | **Case No. 4:19-cv-00616-JED-FHM** |

### FIRST AMENDED COMPLAINT

The Plaintiff, Commercial Resins Company, Inc. ("Commercial Resins"), for its First Amended Complaint against the Defendants, Ron Carlson Jr., ("Ron") and Christine Candy Carlson ("Christine") (collectively "Defendants"), alleges and states as follows:

### GENERAL STATEMENT OF CLAIM

1.      Defendants are husband and wife.  For many years they occupied senior leadership positions at Commercial Resins.  Ron was Commercial Resins' president and CEO, and Christine was the highest ranking financial officer in the company.

2.      When Ron and Christine started in their positions at Commercial Resins, they were married to other people.  At some point in the course of their work at the company, Ron and Christine began to have a romantic relationship.  They married in January 2015.  Thereafter, Ron and Christine used their positions of authority and trust to siphon millions of dollars from the company for their own personal use and benefit.

3.      Ron and Christine were terminated in May 2019, after their misconduct was discovered.  After the terminations, in June 2019, Ron and Christine remotely logged into Commercial Resins' computer systems.   They copied voluminous amounts of Commercial Resins' confidential and proprietary electronic data off of Commercial Resins' computer systems onto external drives.   They then deleted the data from Commercial Resins' system.  This was all done in an attempt to cover up the extent of Ron's and Christine's misconduct and also, on information and belief, to use the data and documents taken to compete with Commercial Resins.

4.      Defendants have refused repeated demands by Commercial Resins for the return of Commercial Resins' monies, vehicles, Kubotas, documents and data, and other assets, as more fully set forth herein.

5.      This First Amended Complaint seeks both money damages from Defendants and also the immediate return of Commercial Resins' monies, vehicles, Kubotas, documents and data, and other assets, as more fully set forth herein.

**PARTIES, JURISDICTION, AND VENUE**

6.      Commercial Resins is an Oklahoma corporation with a principal place of business in Colorado.

7.      Ron and Christine are individual Arkansas citizens.

8.      This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 because the causes of action stated in Counts I and II of the First

Amended Complaint are created by Federal statute.  The Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.

9.      This Court additionally has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

10.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district and because Defendants are subject to this Court's personal jurisdiction.

## FACTS

### Christine and Ron Misappropriate Company Funds

11.      Commercial Resins is a corrosion coating technology and services corporation, specializing in providing epoxy coatings for rebar and pipe to oil and gas operators.

12.      For many years, until May 2019 Ron served as Commercial Resins' CEO and President.

13.      Christine was also an officer at Commercial Resins.  Her title was controller, but as a practical matter Christine was Commercial Resins' highest ranking financial officer, and she had signatory authority on its bank and credit card accounts.

14.      At some point during their tenure at Commercial Resins, Ron and Christine began a romantic relationship.  They married in January 2015.

15.     Almost immediately after their romantic relationship began, Christine and Ron began misappropriating funds from Commercial Resins for their personal use and benefit.

16.     Christine and Ron used various schemes to accomplish the misappropriations.  Some schemes were complicated.  Others were as simple as using Commercial Resins' credit cards for personal expenses and purchases and then paying off the cards using company money (sometimes as much as $85,000 in a month) or even just transferring money directly to other accounts under their control.

17.     Beyond money, Ron and Christine took other property belonging to Commercial Resins for their own personal use and/or for use in other entities they own or control, including vehicles, Kubotas, and machinery.  Even the entities were created using funds siphoned from Commercial Resins.  These assets have not been returned to Commercial Resins.

18.     Christine and Ron used their positions within Commercial Resins—and the trust placed in them by the company—to accomplish the misappropriations and to conceal their misconduct for many years.

19.     Ron and Christine also committed a number acts with the intent of harming Commercial Resins to their own benefit.

## Ron and Christine are Discovered

20.     In 2017, the Board of Directors for the company began to request more information from Ron and Christine about the company's finances.  This was initially not

because the Board suspected any misconduct; at that point, the Board still trusted Ron and Christine completely.  The Board simply desired additional information from Ron and Christine.

21.     In Response to the Board's request, Ron said he would provide the requested information.  However, he did not provide it, and the Board had to request the information again.

22.     This pattern—the Board requesting the information and Ron agreeing to provide it but not actually doing so—repeated itself several times.

23.     In or around February 2018, and seemingly out of the blue, Ron provided the Board with a spreadsheet detailing his misconduct.  In the spreadsheet, Ron admitted he had misappropriated more than $800,000.

24.     Ron also claimed in the spreadsheet to be entitled to certain offsets, based on money he said he was entitled to but did not receive.  The offsets were all nonsense, and including them in the spreadsheet was a transparent attempt by Ron to improperly reduce his admitted liability to the company for his misconduct.

25.     In May 2019 Ron and Christine were terminated by Commercial Resins for their repeated and ongoing misconduct.

**Defendants Steal and Delete Commercial Resins' Confidential Data and Documents**

26.     In the weeks following their termination, Ron and Christine (individually and through agents) illegally and without permission logged in to Commercial Resins systems using remote access.

27.     Once in, they copied voluminous amounts of Commercial Resins' electronic documents and data onto external drives and then deleted the documents and data from Commercial Resins' systems.

28.     Defendants replaced the documents and data they took from Commercial Resins systems with 0 kilobyte files.  This is a technically sophisticated technique used to make sure that deleted files cannot be restored/recovered even by the best forensic computer experts.

29.     At the time of the login and data theft, after Defendants' termination, Defendants no authority to access Commercial Resins' computer systems.  They also did not have authority to copy files from it, or to delete files from it.

30.     The documents and data taken are confidential and proprietary information belonging to Commercial Resins.  They are inherently valuable, and much of their value derives from the fact of their being kept confidential.

31.     Among the data taken are information about, and analyses of, business opportunities belonging to Commercial Resins.  Also among the data taken is evidence of Defendants' extensive improper behavior, including records relating to other entities started and funded using Commercial Resins' monies.

32.     Beyond this, the documents and data taken are crucial to Commercial Resins' day-to-day and ongoing business operations.  Indeed, Commercial Resins was initially unable to login to many of its computer systems—including its ledger and its accounting systems—as a result of Defendants refusing to provide passwords.

33.     Defendants engaged in the copying/deletion scheme to cover up the extent of their misconduct, and also to use the information stolen to compete with Commercial Resins.

34.     Commercial Resins has made repeated demands to Defendants to return the documents and data that Defendants copies and deleted from Commercial Resins' systems.

35.     To this day, Defendants still refuse to return the documents and data, despite having the documents and data in their possession and despite Commercial Resins' clear ownership of the documents and data.

36.     After all this took place, Defendants on multiple occasions improperly accessed Commercial Resins' computer systems—including confidential documents and data that remained on Commercial Resins' system after Defendants' theft—via remote login, before Commercial Resins could figure out a way to prevent their continued access.

37.     Commercial Resins has been damaged, and is continuing to be damaged, by Defendants' deletion and theft in at least two ways.  First, Commercial Resins is damaged to the extent its proprietary and confidential information and data are not kept confidential and proprietary.  Second, Commercial Resins is damaged by the fact that it is without documents and data it needs to effectively and profitably operate its business.

## COUNT I: CIVIL ACTION FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

38.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

39.     Commercial Resins' computer systems are a "protected computer" as that term is defined in 18 U.S.C. § 1030.

40.     In deleting Commercial Resins' electronic documents and data, Defendants knowingly caused transmission of a command that resulted in intentional damage to a protected computer. Thus Defendants' conduct constitutes a violation of § 1030(a)(5).

41.     Defendants were without authority both to access Commercial Resins' computer systems and to alter them by deleting Commercial Resins' files.  Defendants' conduct in this regard was knowing and with intent to defraud.  The value of what was taken was substantially more than $5,000.   Thus Defendants conduct constitutes a violation of § 1030(a)(4).

42.     Finally, Defendants have violated § 1030(a)(2)(c) by intentionally accessing Commercial Resins' computer systems without authorization or by exceeding authorized access to such systems, and by obtaining information from the computer systems.

43.     Commercial Resins has suffered, and continues to suffer, damages in excess of $5,000 as a result of Defendants § 1030 violations.

## COUNT II: CIVIL ACTION FOR VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, 28 U.S.C. § 1832, ET SEQ.

44.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

45.     Commercial Resins was and is the legal owner of numerous trade secrets, many of which reside on its computer systems.  Commercial Resins takes reasonable measures to keep such trade secrets, and the trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

46.     Defendants acquired and/or disclosed the trade secrets by improper means, specifically by copying them from Commercial Resins' computer systems.

47.     As a direct consequence of the Defendants' wrongful conduct, Commercial Resins has been damaged, and will continue to be damaged.

## COUNT III: CONVERSION

48.     The electronic documents and data taken from Commercial Resins' computer systems belong to Commercial Resins.

49.     The movable property taken from Commercial Resins (*e.g.* the vehicles, Kubotas, machinery, etc.) all belong to Commercial Resins.

50.     Defendants exercised over all these assets an ownership inconsistent with Commercial Resins' right of possession.

51.     Commercial Resins has suffered, and continues to suffer, damages as a result.

## COUNT IV CONVERSION BY ALTERATION OR DESCTRUCTION

52.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

53.     Defendants intentionally and without permission materially altered the condition and character of Commercial Resins' computer systems by mass-deleting the documents and data on the systems.

54.     Commercial Resins has suffered, and continues to suffer, damages as a result.

## COUNT V: TRESPASS TO CHATTELS

55.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

56.     Defendants intentionally dispossessed Commercial Resins of its electronic data and documents, as well as its movable assets.

57.     Defendants knowingly and without permission used and intermeddled with computers and computer systems that are the property of Commercial Resins.

58.     Commercial Resins has suffered, and continues to suffer, damages as a result.

## COUNT VI: COMMON LAW MISAPPROPRIATION OF TRADE SCRETS

59.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

60.     The data and information belonging to Commercial Resins that was copied by Plaintiffs is confidential and proprietary information that derives its value from not being readily known to or ascertainably by other persons.

61.     Commercial Resins at all times took reasonable steps to maintain its secrecy.

62.     By copying the information and data from Commercial Resins' system, Defendants have misappropriated it.

63.     Defendants are using, and plan to use the information and data they took, to Commercial Resins' detriment.

## COUT VII: NEGLIGENCE

64.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

65.     Defendants owed a duty to Commercial Resins to act in a reasonable manner with regard to Commercial Resins' electronic documents and data.

66.     Defendants owed a duty to Commercial Resins to act in a reasonable manner with regard to the management and operation of the company.

67.     Defendants breached these duties to Commercial Resins.

68.     Commercial Resins has suffered, and continues to suffer, damages as a result.

## **COUNT VIII: REPLEVIN**

69.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

70.     Commercial Resins is legally entitled to immediate possession of its electronic documents and data, and also its Kubotas and vehicles.  The vehicles in Defendants' possession that belong to Commercial Resins include: a 2009 Silverado; a 2016 Toyota Sequoyah; a 2016 Toyota Tundra; and a 2015 Lexus IS 350.

71.     Defendants are wrongfully detaining Commercial Resins' electronic documents, data, and other assets.

72.     Defendants have no valid right or entitlement to Commercial Resins' electronic documents, data, and other assets.  Pursuant to 12 Okla. Stat. §§ 1571-1585 and Federal Rule of Civil Procedure 64, Commercial Resins is entitled to recover immediate possession of these assets from Defendants.

73.     Given how crucial the documents and data are to Commercial Resins' ongoing business operations, as well as the value that derives from the documents and data not being shared with Commercial Resins' competitors, it is not possible to estimate their value.  They are invaluable to the company, and the harm suffered by the company if they are not promptly returned will be irreparable.

74.     The value of the vehicles is, per Commercial Resins' 2017 tax returns (which were prepared under Ron's supervision) as follows:

    a.  2009 Silverado: $19,206

    b.  2016 Toyota Sequoyah: $70,949

    c.  2016 Toyota Tundra: $58,991

    d.  2015 Lexis IS 350: $55,897.

75.     The property has not been taken from Commercial Resins for payment of a tax assessment, a fine, or an amercement.   The property has not been seized from Commercial Resins under an execution on any order or judgment.

76.     Commercial Resins is informed and believes that Defendants or its agents may conceal, damage, or destroy the property.

### COUNT IX: TEMPORARY INJUNCTION

77.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

78.     An injunction should be issued directing that Defendants immediately return to Defendants all of its electronic documents and data in Defendants' possession, and also if Defendants are permitted to dispose of, sell, or conceal Commercial Resins' assets and monies.

79.     Commercial Resins will suffer irreparable harm if its electronic documents and data are not promptly returned to it and/or are shared with its competitors, and also if Defendants dispose of, sell, or conceal Commercial Resins' assets and monies.

First Amended Complaint.docx

80.     There is no serious argument that the documents, data, assets, and monies do not belong to Commercial Resins, thus Commercial Resins has a strong likelihood of success in its underlying claims against Defendants.

81.     Defendants will suffer no harm if ordered to immediately return to Commercial Resins its electronic documents and data.  And any harm to Defendants if they are unable to dispose of, sell, or conceal Commercial Resins' assets and monies will be significantly outweighed by the benefit to Commercial Resins of preventing that situation from occurring.

82.     An injunction directing that: (a) Defendants immediately return to Defendants all of its electronic documents and data in Defendants' possession and (b) that Defendants be prohibited from dispose of, sell, or conceal Commercial Resins' assets and monies would not be against the public interest.  On the contrary, it would serve the public interest by enabling Commercial Resins to carry out its regular business activities.

## COUNT X: BREACH OF FIDUCIARY DUTY

83.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

84.     Defendants, as a result of their positions within Commercial Resins, owed the company a fiduciary duty.

85.     Defendants breached that duty by, among other things, misappropriating company funds, using company credit cards for their own personal use and/or for the benefit of other entities they own or control, participating in the copying/deletion scheme,

taking additional acts to harm the company to their own benefit, and by accepting compensation to act on the company's behalf during a time they were actively harming/working against Commercial Resins.

86.     Commercial Resins has suffered, and continues to suffer, damages as a result, including, but not limited to, monies and assets taken, and also any and all compensation paid to Ron and Christine during the time they were using their positions to actively harm/work against Commercial Resins.

## COUNT XI: FRAUD

87.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

88.     Defendants, at various times, represented to Commercial Resins, among other things, that they were operating Commercial Resins in a manner consistent with their duties to the company, that they were maximizing the net profit available to Commercial Resins' shareholders, and that the finances of the company were clean.

89.     Furthermore, when Defendants did disclose some of their misconduct to the company in February 2018, they deliberately omitted much of their misconduct in an attempt to deceive Commercial Resins that the disclosure represented the full extent of their misconduct.

90.     All these representations were false.

91.     Commercial Resins relied on the misrepresentations to its detriment.

## COUNT XII: CONSTRUCTIVE FRAUD

92.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

93.     Defendants owed a duty to Commercial Resins to disclose the truth regarding Commercial Resins' financial situation, including their own misappropriations and the impact the misappropriations had on Commercial Resins' profits and profitability.

94.     Furthermore, when Defendants did disclose some of their misconduct to the company in February 2018, they deliberately omitted much of their misconduct in an attempt to deceive Commercial Resins that the disclosure represented the full extent of their misconduct.

95.     Defendants breached this duty to speak.

96.     Commercial Resins relied on their silence to its detriment.

## COUNT XIII: UNJUST ENRICMENT

97.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

98.     Defendants were unjustly enriched to Commercial Resins' detriment.

99.     Equity and good conscience require that Defendants return to Commercial Resins all benefit received as a result of their unjust enrichment.

## COUNT XIV: MONEY HAD AND RECEIVED

100.    Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

101.    Defendants have, as a result of their bad acts, received money belonging to Commercial Resins.

102.    Equity and good conscience require that Defendants repay this money to Commercial Resins.

## COUNT XV: CIVIL CONSPIRACY AND AIDING & ABETTING LIABLIITY

103.    Defendants entered into an agreement to engage in the wrongful acts set forth herein for their personal benefit and the benefit of each other.  One and/or both Defendants engaged in the wrongful acts set forth herein in furtherance of their agreement, causing injury to Plaintiff.  Defendants are therefore jointly and severally liable for any injury inflicted in the course of the conspiracy.

104.    Each Defendant knowingly provided substantial assistance to the other to engage in the wrongful acts set forth herein, which caused Plaintiff injury. Such assistance included without limitation encouragement, support, and other acts of assistance.  Each Defendant is therefore liable for any injury caused by the other's wrongful acts.

WHEREFORE, Commercial Resins respectfully requests that judgment be entered in its favor and prays that the Court grant the following relief:

A.      Actual damages, in an amount to be determined at trial, that Commercial

        Resins has suffered as a result of Defendants' wrongful conduct;

B.      Issue to Defendants the Notice required by FRCP 62 and 12 Okla. Stat. §

        1571(A)(3);

C.      Enter an Order, to be served with the Summons and Notice, directing that

        Defendants not conceal, damage, or destroy Commercial Resins'

        documents and data; that they fully preserve the documents and data intact

        and protect the documents and data pending the hearing on Commercial

        Resins' request for an order for the prejudgment delivery of the same,

        pursuant to FRCP 62 and 12 Okla. Stat. § 1571(C);

D.      Enter an Order directing that the documents and data should be

        immediately delivered to Commercial Resins and directing the appropriate

        law enforcement officer to take the documents and data and deliver the

        documents and data to Commercial Resins;

E.      Render Judgment in favor of Commercial Resins against Defendants for

        possession of the documents and data;

F.      An injunction requiring Defendants to immediately return to Commercial

        Resins its documents and data;

G.      Commercial Resins' costs and attorney fees;

H.      Punitive damages in Commercial Resins' favor; and

I.      Such further relief as the Court may deem just and proper.

J.      Trial Jury Demanded.


DATED this 18th day of November, 2019.


                                        */s/ Michael D. McClintock*
                                        Michael D. McClintock, OBA #18105
                                        Christopher M. Scaperlanda, OBA #31703
                                        M. Alex Duncan, OBA # 32382
                                        MCAFEE & TAFT A PROFESSIONAL CORPORATION
                                        Tenth Floor, Two Leadership Square
                                        211 North Robinson
                                        Oklahoma City, OK 73102
                                        Telephone:    (405) 235-9621
                                        Facsimile:     (405) 235-0439
                                        michael.mcclintock@mcafeetaft.com
                                        christopher.scaperlanda@mcafeetaft.com
                                        alex.duncan@mcafeetaft.com

                                        **ATTORNEYS FOR PLAINTIFF
                                        COMMERCIAL RESINS CORPORATION,
                                        INC.**