## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. COMMERCIAL RESINS COMPANY, INC., an Oklahoma company and<br>2. GREGORY CARLSON, 3. KEVIN CARLSON, and 4. J. MARK CARLSON, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>1. RON CARLSON, JR. and<br>2. CHRISTINE CANDY CARLSON, individuals,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 4:19-cv-00616-JED-FHM** |

## SECOND AMENDED COMPLAINT

Commercial Resins Company, Inc., for its Second Amended Complaint against the Defendants, Ron Carlson Jr., ("Ron") and Christine Candy Carlson ("Christine") (collectively "Defendants"), allege and state as follows:

## GENERAL STATEMENT OF CLAIM

1.        Defendants are husband and wife.  For many years they occupied senior leadership positions at Commercial Resins.  Ron was Commercial Resins' president and CEO, and Christine was the highest-ranking financial officer in the company—regularly referred to by Ron as the company's CFO.

2.        When Ron and Christine started in their positions at Commercial Resins, they were married to other people.  At some point in the course of their work at the company,

Ron and Christine began to have a romantic relationship.  They married in January 2015. Thereafter, Ron and Christine used their positions of authority and trust to siphon millions of dollars from the company, as well as other company assets, for their own personal use and benefit.

3.      Ron and Christine were terminated in May 2019, after their misconduct was discovered.  After the terminations, in June 2019, Ron and Christine remotely logged into Commercial Resins' computer systems.  They copied voluminous amounts of Commercial Resins' confidential and proprietary electronic data off of Commercial Resins' computer systems onto external drives.  They then deleted the data from Commercial Resins' system. This was all done in an attempt to cover up the extent of Ron's and Christine's misconduct and also, on information and belief, to use the data and documents taken to compete with Commercial Resins.

4.      Defendants have refused repeated demands by Commercial Resins for the return of Commercial Resins' monies, vehicles, Kubotas, documents and data, and other assets, as more fully set forth herein.

5.      After the filing of the First Amended Complaint and Defendants' Answer in this lawsuit, Ron asserted for the first time in a separate lawsuit that, as a result of a purported proxy, he should be determined to control Commercial Resins.  The separate suit was recently stayed and administratively closed so that the proxy issue (among other issues) could be determined in this Court. Ron's contentions about the supposed proxy are without basis, factually or legally.

6.      This Second Amended Complaint seeks both money damages from Defendants and also the immediate return of Commercial Resins' monies, vehicles, Kubotas, documents and data, and other assets, as more fully set forth herein.

7.      It further seeks a declaration of the Court that: Ron's purported proxy does not give him unilateral control over Commercial Resins; that Ron's termination from Commercial Resins was properly accomplished; and that Ron is estopped from challenging Commercial Resins' present management's control, acquiesced to their control and actions, and waived any rights to challenge their control and actions, such that Commercial Resins' present management controls Commercial Resins.

## PARTIES, JURISDICTION, AND VENUE

8.      Commercial Resins is an Oklahoma corporation with a principal place of business in Colorado.

9.      Ron and Christine are individual Arkansas citizens.

10.     Gregory Carlson, J. Mark Carlson, and Kevin Carlson are individual Oklahoma citizens.

11.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 because the causes of action stated in Counts I and II of the First Amended Complaint are created by Federal statute.   The Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.

12.     This Court additionally has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district and because Defendants are subject to this Court's personal jurisdiction.

## FACTS

### Christine and Ron Misappropriate Company Funds

14.     Commercial Resins is a corrosion coating technology and services corporation, specializing in providing epoxy coatings for rebar and pipe to oil and gas operators.

15.     Commercial Resins is—and has always been—a family-owned business.  All of its shares are owned by Ron and his four brothers.  No one person has a controlling interest in the company.

16.     For many years, until May 2019 Ron served as Commercial Resins' CEO and President.

17.     Christine was also an officer at Commercial Resins.  Her title was controller, but as a practical matter Christine was Commercial Resins' highest-ranking financial officer, and she had signatory authority on its bank and credit card accounts.  Ron regularly referred to her in emails as Commercial Resins' CFO.

18.     At some point during their tenure at Commercial Resins, Ron and Christine began a romantic relationship.  They married in January 2015.

19.     Almost immediately after their romantic relationship began (and possibly earlier) Christine and Ron began misappropriating funds from Commercial Resins for their personal use and benefit.

20.     Christine   and   Ron   used   various   schemes   to   accomplish   the misappropriations.  Some schemes were complicated.  Others were as simple as using Commercial Resins' credit cards for personal expenses and purchases and then paying off the cards using company money (sometimes as much as $85,000 in a month) or even just transferring money directly to other accounts under their control.

21.     Beyond money, Ron and Christine took other property belonging to Commercial Resins for their own personal use and/or for use in other entities they and/or their friends owned or controlled, including vehicles, Kubotas, and machinery.  Many entities were almost entirely funded using monies siphoned from Commercial Resins.  This includes some companies that were technically owned in part by Commercial Resins.

22.     The assets misappropriated by Defendants have not been returned to Commercial Resins.

23.     Christine and Ron used their positions within Commercial Resins—and the trust placed in them by the company—to accomplish the misappropriations and to conceal their misconduct for many years.

24.     Ron and Christine also committed a number of acts with the intent of harming Commercial Resins to their own benefit.  These acts included, among many other things, issuing distributions of cash to shareholders (including Ron) that was needed by Commercial Resins to fund its ongoing operations—directly contrary to the company's best interest—and without first obtaining board approval as required by Commercial Resins' By-Laws.

### Ron and Christine are Discovered

25.     In 2017, the Board of Directors for the company began to request more information from Ron and Christine about the company's finances.  This was initially not because the Board suspected any misconduct; at that point, the Board still trusted Ron and Christine completely.  The Board simply desired additional information from Ron and Christine.

26.     In Response to the Board's request, Ron said he would provide the requested information.  However, he did not provide it, and the Board had to request the information again.

27.     This pattern—the Board requesting the information and Ron agreeing to provide it but not actually doing so—repeated itself several times.

28.     In or around February 2018, and seemingly out of the blue, Ron provided the Board with a spreadsheet detailing his misconduct.  In the spreadsheet, Ron admitted he had misappropriated more than $800,000.

29.     Ron also claimed in the spreadsheet to be entitled to certain offsets, based on money he said he was entitled to but did not receive.  The offsets were all nonsense, and including them in the spreadsheet was a transparent attempt by Ron to improperly reduce his admitted liability to the company for his misconduct.

30.     In May 2019 Ron and Christine were terminated by Commercial Resins for their repeated and ongoing misconduct.

**Defendants Steal and Delete Commercial Resins' Confidential Data and Documents**

31.     In the weeks following their termination, Ron and Christine (individually and through agents) illegally and without permission logged in to Commercial Resins systems using remote access.

32.      Once in, they copied voluminous amounts of Commercial Resins' electronic documents and data onto external drives and then deleted the documents and data from Commercial Resins' systems.

33.     Defendants replaced the documents and data they took from Commercial Resins systems with 0 kilobyte files.  This is a technically sophisticated technique used to make sure that deleted files cannot be restored/recovered even by the best forensic computer experts.

34.     At the time of the login and data theft, after Defendants' termination, Defendants no authority to access Commercial Resins' computer systems.  They also did not have authority to copy files from it, or to delete files from it.

35.     The documents and data taken are confidential and proprietary information belonging to Commercial Resins.  They are inherently valuable, and much of their value derives from the fact of their being kept confidential.

36.     Among the data taken are information about, and analyses of, business opportunities belonging to Commercial Resins.  Also among the data taken is evidence of Defendants' extensive improper behavior, including records relating to other entities started and funded using Commercial Resins' monies.

37.     Beyond this, the documents and data taken are crucial to Commercial Resins' day-to-day and ongoing business operations.  Indeed, Commercial Resins was initially unable to login to many of its computer systems—including its ledger and its accounting systems—as a result of Defendants refusing to provide passwords.

38.     Defendants engaged in the copying/deletion scheme to cover up the extent of their misconduct, and also to use the information stolen to compete with Commercial Resins.

39.     Commercial Resins has made repeated demands to Defendants to return the documents and data that Defendants copies and deleted from Commercial Resins' systems.

40.     To this day, Defendants still refuse to return the documents and data, despite having the documents and data in their possession and despite Commercial Resins' clear ownership of the documents and data.

41.     After all this took place, Defendants on multiple occasions improperly accessed Commercial Resins' computer systems—including confidential documents and

data that remained on Commercial Resins' system after Defendants' theft—via remote login, before Commercial Resins could figure out a way to prevent their continued access.

42.     Commercial Resins has been damaged, and is continuing to be damaged, by Defendants' deletion and theft in at least two ways.  First, Commercial Resins is damaged to the extent its proprietary and confidential information and data are not kept confidential and proprietary.  Second, Commercial Resins is damaged by the fact that it is/has been without documents and data it needs to effectively and profitably operate its business.

### Ron's Supposed Proxy

43.     On February 11, 2020—three months after this suit was filed, and a month after Ron filed his answer in this suit—Ron filed a separate lawsuit in Tulsa County, in which he alleged, among other things, that he has a proxy that gives him unilateral control over Commercial Resins.  Ron says that that as a result of the proxy, the termination of his employment by the Board of Directors for misconduct was invalid, and, further, that Commercial Resins' majority ownership and present management lack authority to cause the company to pursue the present suit against him.

44.     The separate lawsuit has since been stayed and administratively closed to allow this Court to determine (among other things) the proxy issue.

45.     Ron did not raise the issue of the proxy—formally or informally—at any point before February 2020.  He did not say anything about it in May 2019 when his employment was terminated.

46.     In any event, Ron's contentions about the proxy are legally and factually without basis.

### COUNT I: CIVIL ACTION FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
**(Commercial Resins v. Ron and Christine)**

47.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

48.     Commercial Resins' computer systems are a "protected computer" as that term is defined in 18 U.S.C. § 1030.

49.     In deleting Commercial Resins' electronic documents and data, Defendants knowingly caused transmission of a command that resulted in intentional damage to a protected computer. Thus Defendants' conduct constitutes a violation of § 1030(a)(5).

50.     Defendants were without authority both to access Commercial Resins' computer systems and to alter them by deleting Commercial Resins' files.  Defendants' conduct in this regard was knowing and with intent to defraud.  The value of what was taken was substantially more than $5,000.  Thus Defendants conduct constitutes a violation of § 1030(a)(4).

51.     Finally, Defendants have violated § 1030(a)(2)(c) by intentionally accessing Commercial Resins' computer systems without authorization or by exceeding authorized access to such systems, and by obtaining information from the computer systems.

52.     Commercial Resins has suffered, and continues to suffer, damages in excess of $5,000 as a result of Defendants § 1030 violations.

## COUNT II: CIVIL ACTION FOR VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016, 28 U.S.C. § 1832, ET SEQ.
### (Commercial Resins v. Ron and Christine)

53.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

54.     Commercial Resins was and is the legal owner of numerous trade secrets, many of which reside on its computer systems.  Commercial Resins takes reasonable measures to keep such trade secrets, and the trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

55.     Defendants acquired and/or disclosed the trade secrets by improper means, specifically by copying them from Commercial Resins' computer systems.

56.     As a direct consequence of the Defendants' wrongful conduct, Commercial Resins has been damaged, and will continue to be damaged.

## COUNT III: CONVERSION
### (Commercial Resins v. Ron and Christine)

57.     The electronic documents and data taken from Commercial Resins' computer systems belong to Commercial Resins.

58.     The movable property taken from Commercial Resins (*e.g.* the vehicles, Kubotas, machinery, etc.) all belong to Commercial Resins.

59.     Defendants exercised over all these assets an ownership inconsistent with Commercial Resins' right of possession.

60.     Commercial Resins has suffered, and continues to suffer, damages as a result.

### COUNT IV CONVERSION BY ALTERATION OR DESCTRUCTION
### (Commercial Resins v. Ron and Christine)

61.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

62.     Defendants intentionally and without permission materially altered the condition and character of Commercial Resins' computer systems by mass-deleting the documents and data on the systems.

63.     Commercial Resins has suffered, and continues to suffer, damages as a result.

### COUNT V: TRESPASS TO CHATTELS
### (Commercial Resins v. Ron and Christine)

64.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

65.     Defendants intentionally dispossessed Commercial Resins of its electronic data and documents, as well as its movable assets.

66.     Defendants knowingly and without permission used and intermeddled with computers and computer systems that are the property of Commercial Resins.

67.     Commercial Resins has suffered, and continues to suffer, damages as a result.

### COUNT VI: COMMON LAW MISAPPROPRIATION OF TRADE SCRETS
### (Commercial Resins v. Ron and Christine)

68.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

69.     The data and information belonging to Commercial Resins that was copied by Plaintiffs is confidential and proprietary information that derives its value from not being readily known to or ascertainably by other persons.

70.     Commercial Resins at all times took reasonable steps to maintain its secrecy.

71.     By copying the information and data from Commercial Resins' system, Defendants have misappropriated it.

72.     Defendants are using, and plan to use the information and data they took, to Commercial Resins' detriment.

## <u>COUT VII: NEGLIGENCE</u>
### (Commercial Resins v. Ron and Christine)

73.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

74.     Defendants owed a duty to Commercial Resins to act in a reasonable manner with regard to Commercial Resins' electronic documents, data, monies, and financial assets.

75.     Defendants owed a duty to Commercial Resins to act in a reasonable manner with regard to the management and operation of the company.

76.     Defendants breached these duties to Commercial Resins.

77.     Commercial Resins has suffered, and continues to suffer, damages as a result.

## COUNT VIII: REPLEVIN
### (Commercial Resins v. Ron and Christine)

78.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

79.     Commercial Resins is legally entitled to immediate possession of its electronic documents and data, and also its Kubotas and vehicles.   The vehicles in Defendants' possession that belong to Commercial Resins include: a 2009 Silverado; a 2016 Toyota Sequoyah; a 2016 Toyota Tundra; and a 2015 Lexus IS 350.

80.     Defendants are wrongfully detaining Commercial Resins' electronic documents, data, and other assets.

81.     Defendants have no valid right or entitlement to Commercial Resins' electronic documents, data, and other assets.  Pursuant to 12 Okla. Stat. §§ 1571-1585 and Federal Rule of Civil Procedure 64, Commercial Resins is entitled to recover immediate possession of these assets from Defendants.

82.     Given how crucial the documents and data are to Commercial Resins' ongoing business operations, as well as the value that derives from the documents and data not being shared with Commercial Resins' competitors, it is not possible to estimate their value.  They are invaluable to the company, and the harm suffered by the company if they are not promptly returned will be irreparable.

83.     The value of the vehicles is, per Commercial Resins' 2017 tax returns (which were prepared under Ron's supervision) as follows:

    a.   2009 Silverado: $19,206

    b.   2016 Toyota Sequoyah: $70,949

    c.   2016 Toyota Tundra: $58,991

    d.   2015 Lexis IS 350: $55,897.

84.    The property has not been taken from Commercial Resins for payment of a tax assessment, a fine, or an amercement.  The property has not been seized from Commercial Resins under an execution on any order or judgment.

85.    Commercial Resins is informed and believes that Defendants or its agents may conceal, damage, or destroy the property.

<u>**COUNT IX: TEMPORARY INJUNCTION**</u>
**(Commercial Resins v. Ron and Christine)**

86.    Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

87.    An injunction should be issued directing that Defendants immediately return to Defendants all of its electronic documents and data in Defendants' possession, and also if Defendants are permitted to dispose of, sell, or conceal Commercial Resins' assets and monies.

88.    Commercial Resins will suffer irreparable harm if its electronic documents and data are not promptly returned to it and/or are shared with its competitors, and also if Defendants dispose of, sell, or conceal Commercial Resins' assets and monies.

89.    There is no serious argument that the documents, data, assets, and monies do not belong to Commercial Resins, thus Commercial Resins has a strong likelihood of success in its underlying claims against Defendants.

90.     Defendants will suffer no harm if ordered to immediately return to Commercial Resins its electronic documents and data.  And any harm to Defendants if they are unable to dispose of, sell, or conceal Commercial Resins' assets and monies will be significantly outweighed by the benefit to Commercial Resins of preventing that situation from occurring.

91.     An injunction directing that: (a) Defendants immediately return to Defendants all of its electronic documents and data in Defendants' possession and (b) that Defendants be prohibited from dispose of, sell, or conceal Commercial Resins' assets and monies would not be against the public interest.  On the contrary, it would serve the public interest by enabling Commercial Resins to carry out its regular business activities.

### COUNT X: BREACH OF FIDUCIARY DUTY
**(Commercial Resins v. Ron and Christine)**

92.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

93.     Defendants, as a result of their positions within Commercial Resins, owed the company a fiduciary duty.

94.     Defendants breached that duty by, among other things, misappropriating company funds, using company credit cards for their own personal use and/or for the benefit of their friends and/or other entities they own or control, participating in the copying/deletion scheme, taking additional acts to harm the company to their own benefit, and by accepting compensation to act on the company's behalf during a time they were actively harming/working against Commercial Resins.

95.     Commercial Resins has suffered, and continues to suffer, damages as a result, including, but not limited to, monies and assets taken, and also any and all compensation paid to Ron and Christine during the time they were using their positions to actively harm/work against Commercial Resins.

### COUNT XI: FRAUD
**(Commercial Resins v. Ron and Christine)**

96.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

97.     Defendants, at various times, represented to Commercial Resins, among other things, that they were operating Commercial Resins in a manner consistent with their duties to the company, that they were maximizing the net profit available to Commercial Resins' shareholders, and that the finances of the company were clean.

98.     Furthermore, when Defendants did disclose some of their misconduct to the company in February 2018, they deliberately omitted much of their misconduct in an attempt to deceive Commercial Resins that the disclosure represented the full extent of their misconduct.

99.     All these representations were false.

100.    Commercial Resins relied on the misrepresentations to its detriment.

### COUNT XII: CONSTRUCTIVE FRAUD
**(Commercial Resins v. Ron and Christine)**

101.    Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

102.     Defendants owed a duty to Commercial Resins to disclose the truth regarding Commercial Resins' financial situation, including their own misappropriations and the impact the misappropriations had on Commercial Resins' profits and profitability.

103.     Furthermore, when Defendants did disclose some of their misconduct to the company in February 2018, they deliberately omitted much of their misconduct in an attempt to deceive Commercial Resins that the disclosure represented the full extent of their misconduct.

104.     Defendants breached this duty to speak.

105.     Commercial Resins relied on their silence to its detriment.

### COUNT XIII: UNJUST ENRICMENT
### (Commercial Resins v. Ron and Christine)

106.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

107.     Defendants were unjustly enriched to Commercial Resins' detriment.

108.     Equity and good conscience require that Defendants return to Commercial Resins all benefit received as a result of their unjust enrichment.

### COUNT XIV: MONEY HAD AND RECEIVED
### (Commercial Resins v. Ron and Christine)

109.     Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

110.     Defendants have, as a result of their bad acts, received money belonging to Commercial Resins.

111.    Equity and good conscience require that Defendants repay this money to Commercial Resins.

### COUNT XV: CIVIL CONSPIRACY AND AIDING & ABETTING LIABLIITY
### (Commercial Resins v. Ron and Christine)

112.    Defendants entered into an agreement to engage in the wrongful acts set forth herein for their personal benefit and the benefit of each other.  One and/or both Defendants engaged in the wrongful acts set forth herein in furtherance of their agreement, causing injury to Plaintiff.  Defendants are therefore jointly and severally liable for any injury inflicted in the course of the conspiracy.

113.    Each Defendant knowingly provided substantial assistance to the other to engage in the wrongful acts set forth herein, which caused Plaintiff injury. Such assistance included without limitation encouragement, support, and other acts of assistance.  Each Defendant is therefore liable for any injury caused by the other's wrongful acts.

### COUNT XVI: DECLARATORY JUDGMENT
### (Commercial Resins v. Ron and Christine)

114.    Commercial Resins incorporates all previous paragraphs as if fully set forth herein.

115.    Real and justiciable controversies exist as to: (a) Ron's assertion that he has control of Commercial Resins, including the present validity of a proxy that Ron relies upon to claim he has control of Commercial Resins; and (b) whether Ron's termination as President of Commercial Resins was properly accomplished and effective; and (c) whether

Ron is estopped from challenging the Commercial Resins' present management's control, and acquiesced to their control, and waived any rights.

116.    Commercial Resins requests that the Court: (a) declare that Ron does not control Commercial Resins, the proxy he relies upon to claim control was invalid from the outset, revoked by operation of law, and/or also validly revoked; (b) declare that Ron's termination as President of Commercial Resins was properly accomplished and effective; and (c) declare that Ron is estopped from challenging Commercial Resins' present management's control, acquiesced to their control and actions, and waived any rights to challenge their control and actions, such that the Commercial Resins' present management controls Commercial Resins.

## COUNT XVII: ALTERNATIVE DERIVATIVE CLAIMS
### (Gregory Carlson, J. Mark Carlson, and Kevin Carlson v. Ron and Christine)

117.    Gregory Carlson, J. Mark Carlson, and Kevin Carlson incorporate all previous paragraphs as if fully set forth herein.

118.    Gregory Carlson, J. Mark Carlson, and Kevin Carlson are all shareholders of Commercial Resins.  Together they own more than 50% of its outstanding shares.

119.    In the alternative to Commercial Resins, and only in the event that the proxy is determined to give Ron the control he claims, Gregory Carlson, J. Mark Carlson, and Kevin Carlson assert all the above causes of action derivatively, in their capacity as shareholders and owners of Commercial Resins, and against Ron and Christine.

120.    Demand in such a situation would be futile.  As Ron has demonstrated in bringing the separate state court lawsuit, despite his frank admissions of misconduct, he

has no intention of making amends to Commercial Resins.  Demand that Ron bring suit against himself is therefore excused.

WHEREFORE, Commercial Resins respectfully requests that judgment be entered in its favor and prays that the Court grant the following relief:

A.     Award actual damages, in an amount to be determined at trial, that Commercial Resins has suffered as a result of Defendants' wrongful conduct;

B.     Issue to Defendants the Notice required by FRCP 62 and 12 Okla. Stat. § 1571(A)(3);

C.     Enter an Order directing that the documents and data should be immediately delivered to Commercial Resins and directing the appropriate law enforcement officer to take the documents and data and deliver the documents and data to Commercial Resins;

D.     Render Judgment in favor of Commercial Resins against Defendants for possession of the documents and data;

E.     Enter an injunction requiring Defendants to immediately return to Commercial Resins its documents and data;

F.     Declare that Ron does not control Commercial Resins and that the proxy he relies upon to claim control was invalid from the outset, revoked by operation of law, and/or is revoked and invalid;

G.     Declare that Ron's termination as President of Commercial Resins was properly accomplished and effective;

H.    Declare that Ron is estopped from challenging Commercial Resins' present management's control, acquiesced to their control and actions, and waived any rights to challenge their control and actions, such that Commercial Resins' present management controls Commercial Resins.

I.    Award Commercial Resins' costs and attorney fees;

J.    Award punitive damages in Commercial Resins' favor; and

K.    Award such further relief as the Court may deem just and proper.

L.    Trial Jury Demanded.

DATED this 6th day of August, 2020.

*/s/ Christopher M. Scaperlanda*
Michael D. McClintock, OBA #18105
Christopher M. Scaperlanda, OBA #31703
M. Alex Duncan, OBA # 32382
Collen L. Steffen, OBA # 34026
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Telephone:    (405) 235-9621
Facsimile:     (405) 235-0439
michael.mcclintock@mcafeetaft.com
christopher.scaperlanda@mcafeetaft.com
alex.duncan@mcafeetaft.com
collen.steffen@mcafeetaft.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 6th day of August, 2020, I caused the above document to be electronically uploaded to the Court's CM/ECF system for service upon:

John Jay Carwile                          Stephen Q Peters
Baum Glass Jayne & Carwile, PLLC          Tomlins & Peters PLLC
401 S BOSTON AVE STE 2300                 2431 E 61ST ST STE 305
TULSA, OK 74103                           TULSA, OK 74136
918-938-7944                              918-949-4411
Fax: 918-938-7966                         Email: SPeters@bgjclaw.com
Email: jcarwile@bgjclaw.com

***Attorneys for Defendants***

/s/ *Christopher M. Scaperlanda*