UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COMMERCIAL RESINS COMPANY, INC., et al., )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>RON CARLSON, JR., et al., )<br>)<br>    Defendants. ) | Case No. 19-CV-616-JED-CDL |

**OPINION AND ORDER**

The Court has for its consideration Plaintiff Commercial Resins Company's motion for preliminary injunction (Doc. 71). CRC asks the Court to enter a "preliminary injunction maintaining the status quo decision of the shareholders of CRC—as well as of outside, independent counsel for CRC—not to advance litigation costs to the Defendants." (Doc. 71 at 6). As explained further below, such an injunction is unwarranted at this time because CRC has not shown the requisite risk of imminent harm.

**I.    BACKGROUND**

**A.    General Background**

This dispute revolves around the alleged mismanagement of CRC, a family-owned, pipeline-treatment manufacturer that, for most of its 51-year existence, was run by Ron Carlson Sr. Starting in 2005, Defendant Ron Carlson Jr. (referred to herein as Mr. Carlson) took over as president and chief executive. Until recently, he ran the company with his wife, Defendant Christine Carlson, who served as its controller and, according to the plaintiffs, its de facto chief financial officer.

Mr. and Ms. Carlson's tenure at the helm of CRC came to an end in 2019 after the company's board allegedly discovered that they had misappropriated millions of dollars from the

company. Shortly after the missing funds came to light, Mr. Carlson's brothers and fellow CRC shareholders—Plaintiffs Greg Carlson, Kevin Carlson, and Mark Carlson—voted via a written consent to oust the couple and install a new board. Following the defenestration, Greg Carlson took over as the company's president.

Strictly speaking, the sibling shareholders merely *purport* to have fired Ron and Christine Carlson and to have removed Mr. Carlson from his seat on CRC's board of directors. The legal effect of their votes is disputed.

Mr. Carlson alleges in Counterclaims (Doc. 41 at 4–5) that the sibling shareholders lacked the voting power to remove him. According to the Counterclaims, Ron Carlson Sr. executed a Stock Proxy in Mr. Carlson's favor in 2014 as part of a deal in which Mr. Carlson agreed to take Ron Carlson Sr.'s place as guarantor on $2.5 million in debts owed by CRC.[1] Although Ron Carlson Sr. later sold the shares to the siblings, Mr. Carlson claims that the shares remained burdened by the alleged proxy. Thus, according to Mr. Carlson, the siblings own a majority of CRC's shares, but they do not control a majority of the shareholder votes. Accordingly, he claims, any actions they purport to have taken on behalf of CRC, including his termination and removal from the board of directors, are without effect. He further alleges that, on February 4, 2020, he was "duly elected" president of the corporation and that he and two others were "duly elected" as CRC's board of directors. Notwithstanding Mr. Carlson's claim that he remains legally entitled to control CRC, he seems to concede that his siblings now exercise control of the company for all practical purposes.

---

[1] Although the Counterclaims indicate that a copy of the 2014 Stock Proxy was included as an exhibit, the document was not attached to the Counterclaims. (*See* Doc. 41 ¶ 15).

B.     **Procedural Background**

Mr. Carlson did not initially bring his claims in federal court. After CRC brought the instant suit, he filed an Answer, but it made no mention of the alleged 2014 Proxy or his claim to majority share-voter status. Instead, he brought the allegations in a state court suit against his siblings, claiming that they had wrongfully ousted him and then mismanaged the company. *See Commercial Resins Company, Inc. and Ronald Carlson, Jr., v. Gregory Carlson, et al.*, Case No. CJ-2020-572, Tulsa County District Court, filed February 11, 2020. In addition to Mr. Carlson's individual and derivative claims, the petition purported to join claims asserted by CRC on its own behalf.

Rather than fight these allegations in state court, the siblings moved to dismiss on the grounds that Mr. Carlson was obliged to bring his claims as compulsory counterclaims in the existing federal action. The presiding judge agreed, administratively closing the case pending the outcome of the instant action. The siblings also joined the federal litigation, alleging derivative claims on behalf of CRC and seeking a declaratory judgment determination that Mr. Carlson's alleged proxy is invalid, leaving them a majority of the voting shares. (*See* Doc. 32).

With his state court claims effectively dismissed, Mr. Carlson imported the allegations into the federal litigation in the form of Counterclaims. (*See* Doc. 41). Like the state court petition, the Counterclaims assert causes of action by Mr. Carlson, both as an individual and derivatively on behalf of CRC, as well as by CRC directly.

C.     **CRC'S Advancement Decision**

CRC's Bylaws provide for the advancement of fees to a director or officer who is sued for actions taken in his or her capacity as such. Shortly after filing this suit, CRC hired a local law firm to determine whether advancement was appropriate in this case. (*See* Doc. 71-7). In November 2020, the firm issued a written opinion in its capacity as "outside, independent legal counsel." (Doc. 71). After reviewing a variety of evidence, including the report of a forensic

3

accounting firm hired by the corporation, (*see* Doc. 71-1), the law firm recommended against advancement.

In the law firm's view, the Bylaws limited advancement to cases where the director or officer "acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests." (Doc. 71-3 at 6). Based on the evidence it reviewed, the law firm found that Ron and Christine Carlson had misappropriated company funds for their personal benefit and the benefit of companies affiliated with them. "Such actions on their face were not in the 'best interests' of the Company, and under supporting case law, cannot be construed as 'good faith' for purposes of indemnification under Oklahoma law." (*Id.* at 7). Accordingly, the firm concluded that "indemnification of expenses . . . in advance of final disposition is not proper due to the Federal Defendants' failure to act in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Company." (*Id.*).

On December 2, 2020, about a week before the instant motion was filed, the plaintiff siblings executed a written consent exercising their purported authority as the majority shareholders in the company. (Doc. 71-4). Citing their authority under the Bylaws, the accounting report, and the law firm's findings, they resolved that CRC would not advance Ron and Christine Carlson's litigation expenses because they had not acted in good faith and not in a matter reasonably believed to be in the best interest of the corporation.

## II. PRELIMINARY INJUNCTION STANDARD

To obtain a preliminary injunction, the moving party must show: (1) he is substantially likely to succeed on the merits, (2) he will suffer irreparable injury if the injunction is denied, (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction, and (4) the injunction would not be adverse to the public interest. *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021).

The grant or denial of a preliminary injunction is subject to the trial court's discretion. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975). Moreover, a preliminary injunction is never awarded as a matter of right, even when the moving party will suffer an inevitable harm. *Bhd. of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 532 (1960). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Valley Cmty. Pres. Comm'n v. Mineta*, 373 F.3d 1078, 1084 (10th Cir. 2004).

### III.   DISCUSSION

CRC's motion raises two merits issues: (1) whether the Bylaws grant shareholders the authority to bar the advancement of litigation costs where the officer or director has not acted in good faith and in a matter reasonably believed to be in the best interest of the corporation; and (2) if so, whether the shareholders were justified in barring advancement to the defendants in this case. Having carefully considered the materials put forth by the parties, the Court finds that it need not reach these issues because CRC has not shown that it is likely to suffer an irreparable harm in the absence of the requested relief.

A preliminary injunction will not lie where there is merely the "possibility" of irreparable injury. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The injury must be *likely*. *Id.*

Here, the purported injury—that CRC may be forced to spend its dwindling capital on legal expenses for Ron and Christine Carlson—is purely speculative. Although Mr. Carlson claims to control a majority of CRC's voting shares and asserts that he remains its president, nothing in the record suggests that he has ever attempted to exercise this purported authority on behalf of CRC in order to cause the corporation to pay his expenses. Moreover, even if Mr. Carlson tried to exercise that authority, there is no indication that he has any *actual* control of the corporation or its assets. For example, after the state court case was closed, Mr. Carlson petitioned the presiding judge to reopen the matter in order to consider a "Motion to Compel Advancement of Legal

5

Expenses." (*See* Doc. 71-8). Notably, the target of the requested injunction was CRC itself. This is a clear indication that Mr. Carlson no longer has any practical control over CRC's affairs. If he did, he would have had no need to run to the courthouse.

Mr. Carlson's impotence makes this case distinguishable from *Havens v. Attar*, 1997 WL 55957 (Del. Ch. Jan. 30, 1997), which the plaintiffs cite for the proposition that "[a] motion for preliminary injunction is the proper vehicle to preserve CRC's determination not to advance Defendants' legal expenses." In *Havens*, the court granted a preliminary injunction against the defendants, who were directors of the corporation, enjoining them from advancing themselves expenses incurred while defending against the suit. *Id.* at *1. There, however, the three defendant directors were still on the board and held a majority of the seats, so they were able to—and did—approve their own advancements. Here, Mr. Carlson has never tried to exercise his claimed authority as a shareholder or board member to pay himself, and even if he did, the evidence strongly suggests that his effort would be futile. To the extent the plaintiffs would suggest that Mr. Carlson might, by way of the state court motion, compel CRC to advance litigation costs, their fears are unwarranted. The motion was denied, and the case remains administratively closed pending the outcome of this litigation.

In sum, CRC seeks a preliminary injunction "maintaining the status quo decision of the shareholders," but the status quo appears to be in no danger of changing. Ron and Christine Carlson appear to be powerless to force CRC's hand, and the company remains under the control of the same individuals who voted to prohibit expense advancement in the first place. Accordingly, it appears that CRC is fully capable of avoiding the irreparable harm it claims to fear. Although a change in circumstances could lead to a different result, CRC, for the time being, has not shown a likelihood of irreparable harm.

Given the absence of any imminent harm, the Court sees no need to address the remaining preliminary injunction factors. A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction. *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018). Before the other requirements will be considered, the moving party must first demonstrate that such injury is likely. *Id.* As CRC has failed to do so, the Court's task is at an end, and it need not reach the issue of whether the shareholders had the authority under CRC's Bylaws to bar the advancement of litigation expenses or whether their decision to do so with respect to the defendants was proper.

### IV. CONCLUSION

For the reasons explained above, the plaintiff's Motion for Preliminary Injunction is **denied.**

SO ORDERED this 8th day of June, 2021.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT